There are a lot of issues that need to be addressed in this case, and the first question is the issue of standing, and the district court made a specific factual legal finding that my client lacks standing to protest the search of this bag, and we would submit that that finding was erroneous as a matter of law. And the case we need to look to to examine that question appears to be Davis, and is a case that's illustrative on a lot of points in this case. But in Davis, the court, this court specifically talked about in footnote 2 about the misleading, the misnomer of the term standing. What we really need to look to is whether or not Fay manifested a reasonable expectation of privacy in this bag. And to be candid, there are facts that cuts, that cut both against us and for us. But the first thing we need to address is the district court's reliance on the fact that Mr. Fay made false exculpatory statements at the time of his arrest, basically disclaiming ownership of the bag, saying it was his friend's bag and he was keeping it, and I would note that I'm not aware of that. But that aside, the bag is in a laundry area on a shelf. It's accessible to anybody who's in the apartment and doesn't have any indicia that it's his bag. It's open on the shelf. Why should he have one? Well, Your Honor, you've hit that, right, you've hit the dilemma right there on the head there. We have, as I said, there's facts pouring against us. The bad fact is we're here in the laundry room, which is different than an individual bedroom where you would have a greater expectation that your belongings would be held private. The key fact that we point to here is that this bag was put on a high shelf, and so I dispute the statement that it was accessible to anybody in the apartment. It certainly wasn't accessible to the minor child living there. In fact, there's testimony in there that there's no way she could reach it. We're talking about a shelf that's like five and a half feet at least above the floor. And the police officer who took the bag off the shelf and put it on the washer and dryer specifically testified that he had to get up on his tiptoes to reach to get it. And our argument would be that by Mr. Fay putting the bag up high on the shelf where you couldn't see inside of it unless you took the bag down, where I, and I wish that this fact was in the record, we don't know how tall Ms. Ortiz is, but if she's short, Mr. Fay is five foot ten, if she's specifically shorter than him or the police officer, there's no way she could have even reached the bag without getting some kind of stool or other device to get up there. So our argument on the issue of manifesting an expectation of privacy would rely heavily on the fact that he specifically put this bag on a shelf that was relatively inaccessible, a high shelf in the laundry room. And that's also pertinent to the question of whether or not the bag was open. And I'm going to go on. Let me tell you, I see this case somewhat differently than the framework you've put it in. And I want to be sure you understand at least my difficulty. I don't think you've got any cases exactly like this. This is a case where the homeowner said, I want an illegal gun out of my house. And it seems to me that the homeowner has an undoubted right to say, let's get that thing out of here, and to tell a policeman, take it out. It has nothing to do with expectations of privacy. It has everything to do with the right of the owner of the home to get rid of some illegal property. Any case that says that that can't be done? Well, Your Honor, it's an interesting question that you raise with this authority coupled with a sort of private safety issue. No, you know, yeah, but it's not authority about opening the bag. It's just get the darn thing out of my house. It's illegal. I don't want it. And a guest does not have an unlimited right to store illegal property. If somebody wants it out, it's out. In your honor, I would point to the fact that there's a difference between what you have a private right to do and what the public authority officials can do based upon the private individual's wishes. Why? Because once the homeowner says, out, she has an utter right to get it out. Well, it comes down to whether she had the authority to do that. No, no, she has authority to get it out of her house. Why not? Because the case law distills it to a... No, no, no. The other cases you have are all cases where there was no desire on the homeowner to get rid of it. They either did not, did or did not consent. But that wasn't the issue. I'm giving you a totally different issue. Can a homeowner get rid of illegal property? Well, with the use of public authority. With the use of a police officer. Yeah, with the use of public authority if necessary. Arguably. She could have picked it. If she wanted to, she would have gone out and thrown it out. Right? Yeah, well, Your Honor, I guess she could have. I mean, I guess... Couldn't she have? Do you have any doubt about that? I would have to come down to whether she had actual authority to do that, I suppose. And that's what I guess what I would like... Didn't want it? Out it goes. It's illegal? Then why can't she ask a policeman to help her? Well, what it comes down to, I guess, and I don't know if this is an adequate answer, is that I think your inquiry collapses down on the actual authority. Well, you hope it does, but I don't see why it should. Well, I think that what the direction you appear to be going would be that there is a broader private safety factor, I suppose. And you're right, I haven't really seen this analyzed. I mean, I think people in their home have an undoubted right to keep it safe. And it has nothing to do with the privacy expectations of house guests. Well, as an individual who's inviting a home to reside there, you do have a right to prevent the landlord or the superior property owner from disposing of your property. Oh, as long as you're the guest. But a homeowner wants you out, along with your bag and baggage. Well, then you would have a civil mechanism that would govern how they can accomplish that. Why not a criminal man? Why not a policeman? Well, first of all, there's already a private civil remedy for eviction and disposing of people's property. And those protections, I think, would be what we need to look to here. Do you think there's some constitutional law on that? Well, I guess if you have a constitutional right, I guess, in the privacy of your belongings and your to protect your belongings. Against the homeowner? No, it would just be a civil remedy. I agree. I don't think that law enforcement could come in and take action that derogates civil law. Mr. Carter, you seem kind of down on your time. Oh, I am. Well, it's an interesting point you make, Judge. Yes, I do. It's a very interesting point. And if the Court is inclined to go in the direction of expanding the scope of search-and-seizure law in this manner, I would request that we do supplemental briefing on that, because it does appear to be a very interesting point that doesn't have a lot of governing case law. That would be my response to that. All right. Let me ask you. I don't recall from the testimony whether Ortiz told the officer, when she points at the bag, did she say, that's Faye's bag and his gun is in there? Or did she just say, Faye's gun is in that bag? Your Honor, I did a two-step secrecy. I originally told the police at the place of the business that he had a gun in the home. Right. And the officer accompanied her in the home. She went and scurried around and gathered her purse of belongings. The question is, she just said, that's where it is. That's where the gun is, essentially, right. That's what she said. As far as the officer is concerned at that point, from his viewpoint, she says, there's a gun in that bag up there. She wants it out. Well, as far as the officer is concerned, he doesn't know whose bag it is or anything else at that point. He pulls it down and looks, and, yes, by God, there's a gun in there. Now, from Ortiz's standpoint, she may have known, probably did, that the bag belonged to Faye. But as far as Faye's concerned, he had left the bag open. Now, if the bag had been on the floor in the laundry area, open with the bullets showing there and the towel covering, I think it was a towel covering the item, which is the gun, would he have had an expectation of privacy if it had been on the floor like that? We certainly would have much less of an argument. And additionally, we'd have a very pernicious plain view problem in that case. It's the manipulation of the bag that was a constitutional violation. So his privacy, at least, is enhanced in your position because it was up five and a half feet up. You couldn't tell whether it was open or closed by looking at it. Correct. And at that point, between the officer, the officer didn't know whose bag it was, but it was in a common area. And the owner of the home said, the gun's in there. So the officer, there's not much more the officer could have done. Right. And we would argue that what cuts against or vitiates any finding of apparent authority was Ortiz's manifestation of lack of control over the bag. In fact, the very fact that she had to ask the officers to move the bag and request their assistance to move the bag should have left in the mind of the officer that she had no authority to manipulate the bag. Why do you need to seek police assistance to move a bag that is yours and that you have joint access and control to? I only have about 30 seconds left. I would like to try to reserve that if I may. Sure. Thank you. Mr. Pomerantz. Good morning. Crane Pomerantz for the United States. I'd like to start off where Your Honor left off, which is what I believe to be the operative fact in this case, the fact the bag was open. That distinguishes this case from Fultz and from Davis. Unlike Davis, the bag was in a common area of the house. It was in a laundry room. An open bag in a common area of the house. You'd argue, I guess, that the defendant can't expect to have any privacy in something that's open and in a common area. That's exactly right, Your Honor. Now, if it were on the floor and everybody could see it that walked by, that would be a pretty good argument. But it's five and a half feet up. Your Honor, I understand that. I actually think that based on the facts and the record, defense counsel is making a bigger deal of the height of the shelf than the record justifies. What I mean by that is, let's consider what this is. This is an apartment in which there's a washer and a dryer and there's a shelf. And on that shelf with the bag is laundry detergent and hangers. Things that all of us have in our laundry room, in our house. These are things that Ms. Ortiz presumably accesses on a daily basis when she or Mr. Fay does the laundry. We can't decide this on those kind of presumptions, can we? Understood. No. But it would be a reasonable inference. The record is what was on the shelf. Correct. And it's in the record that there were hangers and laundry detergent on the shelf. It's a reasonable inference that that shelf is accessed on a regular basis. He had to stand on tiptoe to get it or something, right? The officer did say he had to stand on tiptoes. Correct. Unlike Davis, the bag was not concealed under a bed. Unlike Fultz, the bag was not segregated. In Fultz, the defendant had his belongings in cardboard boxes in the garage and only his belongings were in the garage. Here we have Mr. Fay's bag. We have Ms. Ortiz's laundry detergent. We have hangers. We have Mr. Fay's and Ms. Ortiz's belongings all throughout the house. I'd also like to touch on a point that Mr. Carr made, which is to say the fact that Ms. Ortiz asked for assistance demonstrates her lack of authority. I don't think we can lose sight of the fact of why the officers were there in the first place, which is to help this scared single mom to get her belongings out of her house. They were helping her with her own belongings in her own bedroom. And so when she says to them, can you help me with that bag, I don't think that demonstrates any indicia that she recognized the bag didn't belong to her. These are the same facts that justify or demonstrate that Ms. Ortiz had actual authority to get the bag out of the house. The fact the bag was open. The fact that it was not segregated from Ms. Ortiz's belongings. The fact that the bag didn't have Mr. Fay's name on it. The fact that it wasn't closed. The fact that the laundry room doors were open. The fact that it wasn't a common area of the home. And in addition, Your Honor asked the question, was there any more the officers could have done when they come in and Ms. Ortiz says to them, you know, that's where the bag is. Take it out. Given the facts presented to the officers at the time, they reasonably believed that she had the authority to get the bag out of her house with the rest of the belongings that she was removing at the time. If the panel doesn't have any more questions, I would be inclined to sit down. I don't think we do. Okay.   Okay. Thank you, counsel. The matter just argued will be submitted in the next year argument in Ringel. Ringel. Thank you.
judges: Noonan, Thompson, Rymer